UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
SHIRIN YUSUBOV and MAZANTU
PEYSAKHOVA.,

                Plaintiffs,

            v.                                    **MEMORANDUM AND ORDER**
                                                20-CV-3913 (RPK) (CLP)

ZOYA AB MANAGEMENT, LLC; FUBU
MOBILE, INC.; ALBERT BENJAMIN; and
HABITAT ALLIANCE CORP.,

                Defendants.
-----------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      This Court granted summary judgment to plaintiffs on their foreclosure claim and directed plaintiffs to submit a proposed judgment of foreclosure providing for a sale of the property. Plaintiffs' proposed judgment listed $995,125 as the amount due on the loan. Proposed J. 1 (Dkt. #43). In support of their calculation, plaintiffs cited a December 2019 note that modified the terms of the May 2018 mortgage agreement and was signed by defaulting defendant Zoya A.B. Management, LLC. *See* Pls.' Nov. 7, 2023 Ltr. 1–2 (Dkt. #46) (ECF pagination); Pl.'s Mot. for Summ. J., Ex. E ("Dec. 2019 Promissory Note") (Dkt. #38-10). That note, however, was not signed by appearing defendant Habitat Alliance Corp., to whom Zoya conveyed a fifty percent interest in the mortgaged property in March 2019—before the December 2019 note was signed. *See* Dec. 2019 Promissory Note; Pl.'s Mot. for Summ. J., Ex. F ("Mar. 2019 Deed") (Dkt. #38-11). I therefore held oral argument and requested supplemental submissions on whether Zoya could modify the mortgage agreement without Habitat's consent. *See* Feb. 22, 2024 Min. Entry & Order. For the reasons set forth below, I conclude that the December 2019 note was a valid

1

modification.  I nevertheless deny plaintiffs' proposed judgment without prejudice because plaintiffs have failed to establish that $995,125 is the amounted owed to them.

New York law provides that where "the right of the plaintiff is admitted" in a mortgage action, "the court shall ascertain and determine the amount due, or direct a referee to compute the amount due to the plaintiff." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 83 (E.D.N.Y. 2019) (quoting N.Y. Real Prop. Acts. Law § 1321).  Where the court grants summary judgment "in favor of [p]laintiff based on an undisputed showing of default on the mortgage, the procedural posture of the case . . . is as if the right of [p]laintiff had been admitted." *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384 (CS), 2016 WL 6902480, at *3 (S.D.N.Y. Nov. 22, 2016).  But before the court can "ascertain and determine the amount due," N.Y. Real Prop. Acts. Law § 1321(1), plaintiffs must "sufficiently demonstrate, by competent proof, that the amounts claimed are owed" to them, *Dingman*, 2016 WL 6902480, at *5 (quotation marks and citation omitted).  A court "may consider 'both documentary and oral evidence in computing the amount due on the mortgage.'" *Id.* at *4 (quoting *Isaacson v. Karpe*, 445 N.Y.S.2d 37, 38 (App. Div. 1981)).

Under New York law,

> [i]t is well established that while a senior mortgagee can enter into an agreement with the mortgagor modifying the terms of the underlying note or mortgage without first having to notify any junior lienors or to obtain their consent, if the modification is such that it prejudices the rights of the junior lienors or impairs the security, their consent is required.

*Shultis v. Woodstock Land Dev. Assocs.*, 594 N.Y.S.2d 890, 892 (App. Div. 1993); *see also Fleet Bank of N.Y. v. Cnty. of Monroe Indus. Dev. Agency*, 637 N.Y.S.2d 870, 871 (App. Div. 1996) (citing *Shultis*, 594 N.Y.S.2d at 892)).  Courts applying New York law have held that "changing the interest rate on the loan and bringing the additional interest charges within the lien of the mortgage" prejudices junior interest holders by "increas[ing] the total amount of indebtedness

2

placed prior to the subordinate lien." *Shultis*, 594 N.Y.S.2d at 893; *see also In re White*, 514 B.R. 365, 369–70 (Bankr. E.D.N.Y. 2014).

Yet even assuming that the December 2019 note prejudices Habitat, Habitat's consent was not required because Habitat's interest in the mortgaged property arose from a fraudulent conveyance. New York updated its fraudulent conveyance statute on April 4, 2020. *Bd. of Managers of 11th St. Condo. v. HFZ 11 Beach St. LLC*, No. 653467/2021, 2023 WL 6388178, at *2 (N.Y. Sup. Ct. Sept. 30, 2023). For "transfers made or obligations incurred prior to April 4, 2020," such as the transfer at issue in this case, the prior version of New York's fraudulent conveyance statute still governs. *Ibid.* That version (like the current version) provides that a fraudulent conveyance may be "set aside" as to a creditor. N.Y. Debt. & Cred. Law § 278 (1925), *amended by id.* § 278 (2020). It also recognizes (as does the current version) both actual and constructive fraudulent conveyances. *See id.* §§ 273-a, 276 (1925), *amended by id.* § 273 (2020). In addition, it defines an actual fraudulent conveyance as a conveyance made "with actual intent . . . to hinder, delay, or defraud either present or future creditors." *Id.* § 276 (1925), *amended by id.* § 273(a)(1) (2020). And it defines a constructive fraudulent conveyance to include conveyances "made without fair consideration." *Id.* § 273-a (2020), *amended by id.* § 273(a)(2).

Zoya's transfer of a fifty percent interest to Habitat in March 2019 was an actual fraudulent conveyance because the undisputed evidence in the record establishes that the transfer was made with the intent to hinder, delay, or defraud plaintiffs. "The burden of proving 'actual intent' is on the party seeking to set aside the conveyance." *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994) (citation omitted). "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors," the party seeking to set aside the conveyance "is allowed to rely on 'badges of fraud' to support his case, *i.e.*, circumstances so commonly associated with fraudulent transfers

3

that their presence gives rise to an inference of intent." *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted). "These 'badges of fraud' may include (*inter alia*): a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; and retention of control of the property by the transferor after the conveyance." *Ibid.* (citation and quotation marks omitted).

The March 2019 transfer was marked by several badges of fraud. *First*, the sole shareholder of Habitat, Asaf Yevdayev, is related to Zoya's two shareholders, Alfred Benjamin and Zoya Binyamov. *See* Aff. of Asaf Yevdayev ¶¶ 3, 5 (Dkt. #39-10). *Second*, the transfer was not made in the usual course of business. Mr. Yevdayev formed Habitat for the singular purpose of acquiring a fifty percent interest in the mortgaged property. *Id.* ¶ 10. The transfer was also unusual in that it was made less than a year after Zoya took out a mortgage on the transferred property. *See* Pl.'s Mot. for Summ. J., Ex. D (Dkt. #38-9); Mar. 2019 Deed. In addition, Mr. Yevdayev was represented by an attorney, *see* Pl.'s Mot. for Summ. J., Ex. G 20:05–07 (Dkt., #38-12), but he maintains that he did not conduct a title search or ask Mr. Benjamin about the "condition of the title" to the property, Aff. of Asaf Yevdayev ¶¶ 12–14. *Third*, though Mr. Yevdayev claims he accepted the transfer in satisfaction of debt that Mr. Benjamin owed to him, *id.* ¶ 9, the deed states both that "$10" and "$0" were given as consideration for the transfer, Mar. 2019 Deed 4, 8. *Fourth*, Zoya retained a fifty percent interest in the property after the transfer. *See* Mar. 2019 Deed 4. Those badges of fraud establish actual intent. *See, e.g.*, *Cambridge Valley Machining, Inc. v. Hudson MFG LLC*, 470 F. Supp. 3d 230, 262–63 (N.D.N.Y. 2020) (finding actual intent where there was a "close familial relationship" between the debtor and transferee, "the documents memorializing the . . . conveyances themselves" noted that the transferee "did not receive any consideration," the "conveyances were executed at a time when [the debtor] was delinquent on its

4

payments," and the debtor "retained control of its assets"); *Priestley v. Panmedix Inc.*, 18 F. Supp. 3d 486, 503 (S.D.N.Y. 2014) (finding actual intent where the parties to a transaction were "closely related," "the transfer was unusual," there was "inadequate consideration," the debtor was "aware of its inability to pay" the creditor, and the debtor "retained the control of its pledged assets").

Habitat nevertheless argues that the transfer was not fraudulent because satisfaction of the debt constituted fair consideration for the fifty percent interest. Def.'s Mar. 14, 2024 Ltr. 4–5 (Dkt. #52). Though satisfaction of an antecedent debt can constitute fair consideration, *see* N.Y. Debt. & Cred. Law § 272(a) (1925), *amended by id.* § 272(a) (2020), a conveyance can be actually fraudulent, as opposed to constructively fraudulent, "even where fair consideration was paid." *Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 86 (2d Cir. 1996) (citation omitted). Even assuming, then, that Habitat accepted the transfer in satisfaction of Mr. Benjamin's debt, that fact does not prevent the transfer from being an actual fraudulent conveyance.

Habitat also argues that because plaintiffs raised only a foreclosure claim and not a separate fraudulent conveyance claim in their complaint, I cannot now set aside the March 2019 transfer. Def.'s Mar. 14, 2024 Ltr. 5. More specifically, Habitat argues that it lacked "fair notice" of plaintiff's fraudulent conveyance argument. *Ibid.* (quoting *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000)). But Habitat put the validity of its interest in the mortgaged property at issue by arguing that its interest limits plaintiffs' ability to recover from a foreclosure sale. *See* Feb. 22, 2024 Oral Arg. Tr. 14:15–15:14. Habitat therefore cannot claim it lacked fair notice that plaintiffs would contest the validity of its interest in the property.

In short, the March 2019 transfer was a fraudulent conveyance and is therefore "set aside" as to plaintiffs. N.Y. Debt. & Cred. Law § 278 (1925), *amended by id.* § 278 (2020). As a result,

5

the December 2019 note modified the terms of the mortgage agreement, even though Habitat did not consent to the modification.

Habitat next argues that the December 2019 note did not modify the terms of the mortgage agreement because plaintiffs' representative testified during his deposition that he did not "know of" the mortgage agreement being modified. Def.'s Mar. 14, 2024 Ltr. 5–6; *see id.* at 35 (ECF pagination). But plaintiffs have produced a copy of the December 2019 note, which "overwrites any previous notes, documentation and promises that reflect th[e] mortgage." Dec. 2019 Promissory Note 1. And "the best evidence of what parties to a written agreement intend is what they say in their writing." *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013) (citation and brackets omitted). "As such, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Ibid.* (citation and quotation marks omitted).

Nonetheless, plaintiffs have failed to sufficiently demonstrate that the amount due on the mortgage is $995,125. Plaintiffs' proposed judgment of foreclosure asserts that they are entitled to $85,000 in attorneys' fees. Proposed J. 2. Though the December 2019 modification of the mortgage agreement entitles plaintiffs to "reasonable attorneys' fees," Dec. 2019 Promissory Note 2, plaintiffs have not established that the $85,000 figure is reasonable. Because the lodestar that plaintiffs have submitted redacts descriptions for each time entry, *see* Pls.' Nov. 7, 2023 Ltr. 3–9 (ECF pagination), I have no way of assessing "the fair and reasonable value of services rendered" by plaintiffs' attorneys. *Colangelo v. Colangelo*, 673 N.Y.S.2d 897, 899 (Sup. Ct. 1998) (citation omitted); *see Friar v. Vanguard Holding Co.*, 509 N.Y.S.2d 374, 377 (App. Div. 1986) ("The determination of what constitutes a reasonable fee involves extensive consideration of the nature and value of the services rendered by the plaintiffs' attorneys."). In addition, there are several

6

problems with plaintiffs' calculations regarding interest and late fees.  Plaintiffs, for instance, seek to collect double interest for the period of May to December 2019.  *See* Pl.'s Nov. 7, 2023 Ltr. 2.  And Habitat has outlined several other potential issues with plaintiffs' calculations.  *See* Def.'s Nov. 14, 2023 Ltr. 2–4 (Dkt. #47).

Plaintiffs' proposed judgment of foreclosure and sale is accordingly denied without prejudice.  Though plaintiffs have requested that I order a foreclosure sale in advance of determining the amount due on the loan, I decline to do so.  *Cf. Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991) (noting that partial judgments are to be entered "sparingly").  Within thirty days, plaintiffs shall file a supplemental submission in support of its calculation on the amount due.  Plaintiffs' submission should include a more detailed lodestar and address the issues that Habitat identified in its November 14, 2023, letter.  Habitat may file a response within thirty days of the supplemental submission's filing.

SO ORDERED.

                                                  *Rachel Kovner*
                                                  RACHEL P. KOVNER
                                                  United States District Judge

Dated: March 12, 2025
       Brooklyn, New York